UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TEDRIC KEWON JONES,

               Plaintiff,

      v.

HOMESTATE ASSET MANAGEMENT
LLC,

             Defendant.

_____

**DECISION AND ORDER**

6:23-CV-06507 EAW

## **INTRODUCTION**

*Pro se* plaintiff Tedric Kewon Jones ("Plaintiff") commenced the instant action alleging violations by defendant Homestate Asset Management LLC ("Defendant"). (Dkt. 1 (complaint); Dkt. 4 (amended complaint)). Plaintiff has also filed a motion for leave to proceed *in forma pauperis* (Dkt. 2), a motion to appoint counsel (Dkt. 5), and a motion to stay eviction (Dkt. 6).

The Court has reviewed Plaintiff's motion for *in forma pauperis* status (Dkt. 2), and it is granted. The Court has also reviewed Plaintiff's amended complaint as required by 28 U.S.C. § 1915(e)(2) and concludes that his claims must be dismissed. However, given Plaintiff's *pro se* status, the Court will grant Plaintiff the opportunity to amend his claims.

## **BACKGROUND**

Plaintiff filed his complaint and a motion to proceed *in forma pauperis* on August 31, 2023. (Dkt. 1; Dkt. 2). In his complaint, Plaintiff alleged that Defendant discriminated

against him when it refused to honor his Emergency Rental Assistance Program ("ERAP") benefits, and also denied him the right to renew his lease and failed to address maintenance repairs. (Dkt. 1).

Thereafter, in late January 2024, Plaintiff filed an amended complaint, a motion to appoint counsel, and a motion to stay eviction. (Dkt. 4; Dkt. 5; Dkt. 6). Plaintiff's amended complaint contains more detailed allegations than those included in his original complaint, but is based on the same conduct. As is required at this stage of the proceedings, the Court treats Plaintiff's allegations as true.

Plaintiff alleges that in 2022 through 2023, he advised management at his apartment building, where he lived on the fifth floor of 111 East Avenue, that he was going to use the ERAP based on Covid-19 hardship to pay his rent. (Dkt. 4 at 1-2). After Plaintiff informed management about this benefit, they began discriminating against him and denied him use of the ERAP, to have him illegally evicted from the property. (*Id*. at 1). Plaintiff sent an email to the leasing manager, Heather Simon, stating that he would use the ERAP to fulfill his rental obligations. (*Id*.). Defendant responded, "GOOD LUCK WITH YOUR NEW FOUND FINANCIAL AID," and did not accept or work with Plaintiff to complete an application so that it could be signed up for the ERAP. (*Id*.).

Plaintiff further alleges that, during the time he was attempting to get Defendant to accept the ERAP, there were "severe maintenance repairs" and that they went unaddressed by Defendant for over three years, despite that Plaintiff made attempts to ask management about the repairs. (*Id*.). Management also harassed Plaintiff for having family and friends at his residence to pick him up or to visit him. (*Id*.). Further, maintenance managers and

workers entered Plaintiff's apartment without proper notice on numerous occasions, his apartment was broken into and items were stolen, and "the only people who had access to the apartment were maintenance workers." (*Id*. at 1-2). As a result, Plaintiff had to file an insurance claim to recover part of what was lost. (*Id*. at 2).

Plaintiff further alleges that there was a maintenance repair in the attic of his apartment, that he did not have proper notice of it, and the repair caused the ceiling to cave in over his head and caused a burst pipe and water damages to his apartment, including electrical damage to his kitchen and other devices and appliances in the vicinity. (*Id*.). As a result, Plaintiff has suffered emotional and psychological damage, for which he received counseling and therapy. (*Id*.).

Plaintiff also alleges that Defendant has friends and associates that work at the bar downstairs at 111 East Avenue, where Plaintiff visits for dinner or social activities. (*Id*.). Plaintiff contends that he has been "met with libel and ostracizing" due to Defendant's employees sharing details about Plaintiff's residency, which has caused him humiliation. (*Id*.).

After refusing to accept the ERAP, Defendant tried to evict Plaintiff, and Defendant told the judge in eviction court that it purposely did not want to accept the ERAP funds, which caused Plaintiff humiliation. (*Id*.). Plaintiff's two children living with him at 111 East Avenue were also removed from the premises, due to the safety concerns with the building. (*Id*.). Plaintiff alleges that Defendant terminated his lease in 2021, without notification and for no reason other than discrimination, which violates the Fair Housing Act of 1968. (*Id*.). Plaintiff requests immediate relief and damages for discrimination,

gross negligence, gross mismanagement, violating lease agreements, libel, and slander, in the amount of $10 million.  (*Id*.).

Plaintiff attaches a flier for the ERAP to his amended complaint.  (*Id*. at 3).  The flier describes the ERAP as the "New York State Emergency Rental Assistance Program," and explains the protections offered by the program for both tenants and landlords.  (*Id*.).

## DISCUSSION

### I.   Plaintiff's Motion for *In Forma Pauperis* Status is Granted

Plaintiff's affirmation of poverty has been reviewed in accordance with 28 U.S.C. § 1915(a)(1).  Plaintiff has met the statutory requirements for *in forma pauperis* status and permission to proceed *in forma pauperis* is granted.  The Court now turns to its obligation to screen Plaintiff's amended complaint pursuant to 28 U.S.C. § 1915.

### II.   Legal Standard

"Section 1915 requires the Court to conduct an initial screening of complaints filed by civil litigants proceeding *in forma pauperis*, to ensure that the case goes forward only if it meets certain requirements."  *Guess v. Jahromi*, No. 6:17-CV-06121(MAT), 2017 WL 1063474, at *2 (W.D.N.Y. Mar. 21, 2017), *reconsideration denied*, 2017 WL 1489142 (W.D.N.Y. Apr. 26, 2017).  In evaluating the complaint, a court must accept as true all of the plaintiff's factual allegations and must draw all inferences in the plaintiff's favor.  *See, e.g.*, *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003).  Upon conducting this initial screening, a court must dismiss the case pursuant to § 1915(e)(2)(B) "if the [c]ourt determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune

from such relief." *Eckert v. Schroeder, Joseph & Assocs.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005). "In addition, if the Court 'determines at any time that it lacks subject-matter jurisdiction, the Court must dismiss the action.'" *West v. Sanchez*, No. 17-CV-2482 (MKB), 2017 WL 1628887, at *1 (E.D.N.Y. May 1, 2017) (quoting Fed. R. Civ. P. 12(h)(3)); *see also English v. Sellers*, No. 07-CV-6611L, 2008 WL 189645, at *1 (W.D.N.Y. Jan. 18, 2008) ("[E]ven pleadings submitted *pro se* must fit within the subject matter jurisdiction of an Article III court. . . .").

III. **Plaintiff's Claims are Dismissed**

Construing Plaintiff's amended complaint in the light most favorable to him, he alleges that he was discriminated against during the course of his rental with Defendant, including when Defendant refused to accept his request to utilize the ERAP to pay his rent, and following this refusal, Plaintiff was denied maintenance requests in his apartment, he was harassed, and Defendant attempted to evict him from the premises. Plaintiff alleges that Defendant violated the Fair Housing Act of 1968 ("FHA") (Dkt. 4 at 2), and also that Defendant was negligent, violated the lease agreement, and committed libel and slander (*id.*). For the following reasons, Plaintiff's claims are dismissed.

The FHA prohibits discrimination in housing based on race, color, national origin, religion, sex, familial status, and disability. *See* 42 U.S.C. § 3604 (stating that "it shall be unlawful . . . [t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin," and also that it is unlawful "[t]o discriminate against any person in the terms, conditions, or

privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin")).  The Act was amended in 1988 to further prohibit discrimination against handicapped persons.  *Id*.; *see also Gilead Comm. Servs., Inc. v. Town of Cromwell*, 432 F. Supp. 3d 46, 66 (D. Conn. 2019) ("the 1988 Amendments to the Fair Housing Act extended the Fair Housing Act's protections against housing discrimination to disabled individuals" (quotations and citation omitted)).  To establish a *prima facie* case of housing discrimination under the FHA, a plaintiff must show "(1) that they are members of a protected class; (2) that they sought and were qualified to rent or purchase the housing; (3) that they were rejected; and (4) that the housing opportunity remained available to other renters or purchasers."  *Mancuso v. Douglas Elliman LLC*, 808 F. Supp. 2d 606, 617 (S.D.N.Y. 2011) (citation omitted).  "A plaintiff can make out a claim of discrimination [under the FHA] either on a theory of disparate impact or one of disparate treatment." *Mohamed v. McLaurin*, 390 F. Supp. 3d 520, 545 (D. Vt. 2019) (citation omitted).

Here, Plaintiff does not allege that he was denied housing based on some protected characteristic, such as race, color, national origin, sex, familial status, or disability.  In fact, Plaintiff does not allege that he falls into any of these protected classifications, nor does he allege facts supporting that Defendant discriminated against him on the basis of some protected characteristic.  Rather, Plaintiff alleges that he was denied housing because Defendant did not accept his ERAP application.  This allegation, standing alone, does not amount to a violation of the FHA.  For example, Plaintiff does not allege that Defendant engaged in a practice by which it refused to participate in the ERAP as to minorities, only.

While the FHA protects individuals against discrimination based on certain protected characteristics, it does not protect against any conduct by landlords. Because Plaintiff has failed to allege that he was discriminated against on the basis of a protected characteristic, his claim brought pursuant to the FHA is dismissed.

Plaintiff further asserts various state law claims, including claims for gross negligence, libel, slander, and breach of lease agreements. Because the Court has dismissed Plaintiff's discrimination claim under the FHA, it declines to exercise jurisdiction over these state law claims, and therefore they are dismissed without prejudice.

Given Plaintiff's *pro se* status, the Court will grant him leave to file a second amended complaint so that he may have the opportunity to better articulate his claims. Plaintiff must file his second amended complaint within **45 days** of the date of this Decision and Order. If Plaintiff fails to file a second amended complaint within that time, the Clerk of Court is directed to dismiss this case without further Order of the Court.

Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, any amended complaint must include all allegations against Defendant so that the amended complaint stands alone as the only complaint that Defendant must answer in this action.

Plaintiff's remaining motions—that is, his motion to appoint counsel (Dkt. 5) and motion to stay eviction (Dkt. 6)—are denied without prejudice as moot. The Court notes that Plaintiff has offered no argument in support of his motion to stay eviction. Rather, he

states in conclusory fashion that he is "requesting a stay of eviction," and attaches the aforementioned ERAP flier.  (*See* Dkt. 6).  Even assuming the Court had the power to stay eviction proceedings before the eviction court, *see Moore v. Capital Realty Grp., Inc.*, No. 21-CV-1099LGF, 2023 WL 4699915, at *4 (W.D.N.Y. July 24, 2023) (explaining that "[c]ourts within the Second Circuit have repeatedly held the [Anti-Injunction Act] bars a federal court from enjoining eviction proceedings in state court," unless one of three exceptions applies), Plaintiff has failed to offer sufficient argument in support of the Court taking any such action.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion to proceed *in forma pauperis* (Dkt. 2) is granted.  Plaintiff's amended complaint (Dkt. 4) has been screened in accordance with 28 U.S.C. § 1915(e)(2), and the Court concludes that his claims must be dismissed as discussed herein.  Further, Plaintiff's motion to appoint counsel (Dkt. 5) and his motion to stay eviction (Dkt. 6) are denied as moot.

Given Plaintiff's *pro se* status, and as described above, the Court will grant him leave to file a second amended complaint within **45 days** of the date of this Decision and Order.  If Plaintiff fails to file a second amended complaint by that date, the Clerk of Court is directed to dismiss this case without further Order of the Court.

In the event Plaintiff fails to file a second amended complaint and the case is dismissed, the Court certifies, for the reasons discussed above and pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rule of Appellate Procedure 24(a)(3)(A), that any appeal from this Decision and Order would not be taken in good faith.  Accordingly, leave to appeal to

the Court of Appeals as a poor person is denied.  *See Coppedge v. United States*, 369 U.S.

438 (1962).  Any request to proceed *in forma pauperis* on appeal should be directed to the

United States Court of Appeals for the Second Circuit in accordance with Federal Rule of

Appellate Procedure 24.

      SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      April 29, 2024
             Rochester, New York